UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Thomas Sellers, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>Event Tickets Center, Inc.,<br><br>　　　　*Defendant*. | Case No. 1:24-cv-01881<br><br><br><br>**JURY TRIAL DEMANDED** |

**Class Action Complaint**

**Table of Contents**

I.      Introduction. ...................................................................................................................1
II.     Parties. ..........................................................................................................................1
III.    Jurisdiction and venue. ..................................................................................................2
IV.     Facts. .............................................................................................................................2
        A.      The New York Arts and Cultural Affairs law. ..................................................2
        B.      Event Tickets Center's purchase process violates the law. ...............................3
        C.      Plaintiff purchased tickets from Event Tickets Center. ...................................10
        D.      Class Action Allegations. ................................................................................10
V.      Claims. ........................................................................................................................12
VI.     Jury Trial Demand. .....................................................................................................13
VII.    Prayer for Relief. .........................................................................................................13

**I.     Introduction.**

1. In recent years, companies that sell goods and services have sought to boost revenues by adding junk fees. What are junk fees? They are hidden charges that attach to purchases of goods or services.[1] The fee is only disclosed *after* the consumer has decided to make the purchase, obscuring the true price of the product and preventing comparison shopping. Junk fees are pervasive, and cost American consumers billions of dollars per year.

2. Junk fees are particularly prevalent in online ticket sales. Ticketing companies advertise one price for a ticket, and then load the ticket up with additional fees during the purchase process.

3. To protect New Yorkers from this practice, New York passed the Arts and Cultural Affairs Law §25.07. Under the law, "every…ticket reseller, or platform that facilitates the sale or resale of tickets…shall disclose the total cost of the ticket, <u>inclusive of all ancillary fees that must be paid in order to purchase the ticket</u>." N.Y. Arts & Cult. Aff. Law §25.07(4) (emphasis added). The "disclosure of the total cost and fees shall be displayed in the ticket listing <u>prior to the ticket being selected for purchase</u>." *Id.* (emphasis added). "The price of the ticket <u>shall not increase</u> during the purchase process." *Id.* (emphasis added).

4. Despite this, Event Tickets Center sells tickets in New York with hidden junk fees. The fees are not disclosed prior to the ticket being selected for purchase, and the price of the ticket increases during purchase. This is illegal under New York law. Consumers like Plaintiff purchased tickets from Event Tickets Center, with hidden fees that violated New York law.

**II.    Parties.**

5. Plaintiff Thomas Sellers is a citizen of New York (domiciled in Queens, New York).

---

[1] https://www.whitehouse.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

6. The proposed class includes citizens of the State of New York.

7. Defendant Events Tickets Center Inc. ("Event Tickets Center") is a corporation with its principal place of business in Gainesville, Florida.

## III. Jurisdiction and venue.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

9. The Court has personal jurisdiction over Defendant because Defendant sold tickets to consumers in New York, including Plaintiff. Defendant has been doing business in New York during all relevant times. Defendant has substantial contacts with, and receives substantial benefits and income from New York.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold event tickets to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. The New York Arts and Cultural Affairs law.

11. The New York legislature enacted Arts & Cultural Affairs Law § 25.07(4), which went into effect in August 29, 2022. It states, every "Every operator or operator's agent of a place of entertainment, any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets <u>shall disclose the total cost of the ticket, inclusive of all ancillary fees</u> that must be paid in order to purchase the ticket, and <u>disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge</u> to the

2

purchaser." *Id.* (emphasis added).

12. The disclosure of the total cost and fees must "be displayed in the ticket listing <u>prior to the ticket being selected for purchase</u>." *Id.* (emphasis added).

13. The law further states, "The price of the ticket <u>shall not increase during the purchase process</u>, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor." *Id.* (emphasis added).

14. As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices." N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill* S.9461. Thus, any increase in price *after* the consumer first visits the ticket marketplace and first sees a list of seat prices is illegal.

### B. Event Tickets Center's purchase process violates the law.

15. Event Tickets Center's purchase process violates New York law in multiple ways. The price increases during the purchase process. The total cost and fees are not displayed in the ticket listing prior to the ticket being selected for purchase. And the purchase process never adequately discloses the portion of the ticket price stated in dollars that represents a service charge or other fee.

16. When a consumer visits Defendant's website, www.eventticketscenter.com, they can view Event Tickets Center's featured tickets and upcoming events. An example is shown below.



17.     After a consumer selects an event, they are taken to the tickets screen.  Consumers can select event performances, based on their date and location. Consumers can then select a particular performance.

18. After the consumer selects a particular event on a particular date, they are taken to a page with the venue seat map, where they can select the quantity, price, and location of their desired tickets. A representative example is shown below.



19. At this point, the ticket purchasing process has begun. This is because the consumer has visited a ticket marketplace and first seen a list of seat prices. *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill* S.9461 ("the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices."). For example, as shown in the screen above, the seats are listed with specific prices. For example, a ticket at 200 Level 220, Row 6, is listed at $111/ea[ch]. The listing at Row 7 is $115/ea[ch].



20. When consumers click "select," the tickets are selected for purchase. Prior to this point, there is no disclosure of extra fees.

21. After seat selection, consumers confirm the quantity of their tickets through a pop-up on the left side of the screen. They are again shown a price for the ticket. In the example below, the estimated subtotal is $524 for two tickets, or $262 for one ticket. Customers are then directed to "continue to checkout."



22.     At this point, the small print above "Continue to Checkout" states "(Not including fees.)" The price is also quoted as an "Estimated Subtotal." This, however, does not comply with the law. As described above, the law requires a clear and conspicuous disclosure of the fees and total ticket price up front.

23.     In the next screen, consumers enter their email address where the tickets and receipt will be emailed and confirm their payment method. Again, the price for the tickets is listed as $262 each, for a total of $524. And on this screen, there is no mention of fees.

7



24. At the next screen, consumers enter their payment information, as shown below. Again, the price of the tickets is $524, or $262 per ticket. Again, there is no mention of fees.



      25.      The last prompt offers consumers a choice for ticket insurance.



      26.      Right above the "Place Order" button, in small gray font, Event Tickets Center discloses that the price of the tickets is now $691.68. This is a $167.68 increase from the prices shown on the three preceding screens. Thus, the price of the ticket increases substantially during the purchase process. This is the first time the actual total price is displayed: at the very end of the process, in hidden fine print.

      27.      Event Tickets Center also fails to disclose, "in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" as required by New York law. The disclosure does not separate out what fees are being added to the previously-quoted ticket price. It just presents a new total, with everything lumped together. And under the law, consumers are not required to try to reverse engineer what fees were tagged on to the ticket price.

9

28. Thus, Event Tickets Center sells tickets in violation of New York Arts & Cultural Affairs Law § 25.07(4).

### C. Plaintiff purchased tickets from Event Tickets Center.

29. On February 22, 2024, Mr. Sellers purchased two tickets for the *One Night of Queen – Gary Mullen and The Works* performance in April 2024. The tickets were for a show in Westbury, New York. He purchased the tickets online through Event Tickets Center's website, www.eventticketscenter.com, while living in Queens, New York. Mr. Sellers paid a service fee after selecting his tickets.

30. When Plaintiff purchased the tickets, the transaction flow process that he went through was substantially similar to the flow depicted above.

31. Plaintiff was harmed by paying the illegal service fee. The fee was not disclosed to the Plaintiff before the purchasing process began and before the tickets were selected for purchase. The price of the tickets went up during the purchasing process. And the amount of the service charge or fee was never clearly and conspicuously disclosed.

### D. Class Action Allegations.

32. Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: Plaintiff seeks to represent a class defined as all individuals in the United States, who purchased electronic tickets to any event in any venue located in New York from Defendant's website on or after August 29, 2022.

- New York Subclass: Plaintiff also seeks to represent a subclass defined as all individuals in the state of New York who purchased electronic tickets to any event in any venue located in New York from Defendant's website on or after August 29, 2022.

33. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant,

10

Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or it's parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability**

34. The proposed classes contain members so numerous that separate joinder of each member of the class is impractical. There are at least thousands or tens of thousands of class members for each of the proposed classes.

35. Class and subclass members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions**

36. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Event Tickets Center failed to disclose the total cost and fees for the ticket listing prior to the ticket being selected for purchase;

(2) whether the price of the ticket increased during Event Tickets Center's purchasing process;

(3) damages needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy**

37. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased tickets from Event Tickets Center. There are no conflicts of interest between Plaintiff and the class.

**Superiority**

38. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands or tens of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.    Claims.**

<u>**Count I: New York Arts & Cultural Affairs Law § 25.07**</u>

39. Plaintiff incorporates the facts alleged above.

40. Plaintiff brings this claim individually and on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim individually and on behalf of the New York Subclass.

41. Event Tickets Center is a "licensee or other ticket reseller" and "platform that facilitates the sale or resale of tickets" because it sells and resells tickets, and also facilitates the sale and resale of tickets for live entertainment events, such as concerts, theatrical productions, and sporting events.

42. As alleged in detail above, Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" before a ticket is selected for purchase.

43. The service fee is an ancillary fee that must be paid to purchase tickets sold by Event Tickets Center. As further alleged above, Defendant failed to disclose the total cost (that is, the cost of the ticket and the service fee) prior to the consumer selecting the ticket for purchase.

44. As further alleged above, Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the price of its tickets during the purchase process.

45. In addition, Defendant failed to disclose the service fee in a clear and conspicuous manner, as required by law.

46. By charging an illegal fee, Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members.

47. Plaintiff seeks actual or statutory damages of $50, whichever is greater, as authorized by New York Arts & Cultural Affairs Law § 25.33, reasonable attorney's fees, and all other available relief.

## VI. Jury Trial Demand.

48. Plaintiff demands the right to a jury trial on all claims so triable.

## VII. Prayer for Relief.

49. Plaintiff seeks the following relief for himself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory damages, as available by law;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: March 13, 2024

Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)\*
jonas@dovel.com
Christin Cho (Cal. Bar No. 238173)\*
christin@dovel.com
DOVEL & LUNER, LLP

13

201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiff*

* Pro Hac Vice forthcoming